## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CARMEN L. EUBANKS**                                                              **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO.:1:13-cv-00519-KS-MTP**

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security Administration**                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff Carmen L. Eubanks ("Eubanks") seeks judicial review of the Acting Commissioner of Social Security Administration's decision to deny her claim for Disability Insurance Benefits ("DIB").  Having considered the pleadings, the record, and the applicable law, the Court hereby **AFFIRMS** the Acting Commissioner's decision.

### I. PROCEDURAL HISTORY

Ms. Eubanks applied for DIB on December 21, 2010, alleging disability beginning on October 22, 2010.  [7] at 118, 134.[1]  The Agency denied the claim and confirmed the denial following her request for reconsideration.  [7] at 93-98, 103-05.  Ms. Eubanks then requested a hearing before an Administrative Law Judge ("ALJ").  [7] at 21.  Administrative Law Judge Horace Thompson held a hearing on January 26, 2012, at which Ms. Eubanks appeared with counsel and testified.  [7] at 40-62.  Following the hearing, the ALJ issued a decision denying Ms. Eubanks's claim on February 17, 2012.  [7] at 25-35.  The Appeals Council denied her subsequent request for review, making the ALJ's decision the final decision of the Acting Commissioner.  [7] at 5-7.  The decision is now ripe for judicial review under 42 U.S.C. § 405(g).

### II. STANDARD OF REVIEW

---

[1] For ease of reference and pursuant to the court's Scheduling Order [3], the administrative record is cited herein by reference to the court docket number and docket page number in the federal court record (not the Administrative Record page number).

The standard of review is highly deferential.  In reviewing the Acting Commissioner's decision, this Court may only inquire into (1) whether there is substantial evidence to support the Commissioner's findings and (2) whether the correct legal standards were applied in evaluating the evidence.  42 U.S.C. § 405(g) (2012); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence has been defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Adams v. Bowen*, 833 F.2d 509, 511 (5th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  Procedural perfection is not required in an administrative proceeding, so long as the substantial rights of a party are not affected.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

To determine whether a claimant is disabled, the ALJ employs a five-step analysis.  20 C.F.R. § 416.920(a)(4).  First, the claimant must prove he is not currently engaged in substantial gainful activity.  *Id.* § 416.920(a)(4)(i).  Second, the claimant must prove that his impairment, or combination of impairments, is "severe."  *Id.* § 416.920(a)(4)(ii).  At step three, disability will be found if the claimant meets or exceeds one of the impairments contained in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  Fourth, if disability cannot be found based on the claimant's medical status alone, he must show that his impairment(s) prevent him from returning to his past relevant work.  *Id.* § 416.920(a)(4)(iv).  At steps one through four, the burden of proof rests with the claimant to show

he is disabled. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If he satisfies this burden, it shifts to the Commissioner at step five to show there is other gainful employment the claimant can perform, given his residual functional capacity, age, education, and work experience. 20 C.F.R. 416.920(a)(4)(v). If the claimant cannot adjust to other work, he is disabled. *Id.* A finding that the claimant is disabled at any step in the process ends the analysis. *Harrell*, 862 F.2d at 475.

### III. ALJ DECISION

On February 17, 2012, ALJ Horace Thompson ruled that Ms. Eubanks was not disabled and therefore ineligible for DIB. [7] at 35. The ALJ determined that Ms. Eubanks met the insured status requirements of the Social Security Act through December 31, 2015. [7] at 27. At step one, he found that Ms. Eubanks had not engaged in substantial gainful activity since October 22, 2010, the alleged onset date. *Id.* At step two, the ALJ found that Ms. Eubanks had severe impairments that significantly interfere with her ability to perform work-related activities. *Id.* Her impairments were listed as: obesity, post hypothyroidism and gastric bypass, borderline spinal stenosis at L3-L4 and L4-L5, left knee pain post fracture of proximal fibula, depression due to pain, affective mood disorder with depression, anxiety, social phobia, oral lichen plantus, allergic rhinitis, with a history of kidney stone removal, breast implants, and tummy tucks. *Id.* At the third step, the ALJ determined that Ms. Eubanks's impairments, both individually and taken together, were not severe enough to satisfy the Listings, mentioned above. *Id.*

To determine whether Ms. Eubanks was capable of returning to past work under step four, the ALJ assessed her Residual Functional Capacity ("RFC").[2] The ALJ found that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a) except she needs a sit/stand option. She

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. § 416.945.

should never climb ladders, ropes or scaffolds and only occasionally climb ramps and stairs, stoop, or crouch. She can frequently kneel and crawl. Because of a combination of pain-related, mental, and medication related impairments that affect memory and concentration, she is limited to work that requires only simple, routine, repetitive tasks, dealing with objects rather than data or people.

[7] at 29. In reaching this RFC, the ALJ noted that it is supported by the whole of the record and that he considered all the claimant's pain symptoms to the extent that they were consistent with the evidence.[3] [7] at 29, 33. In doing so, the ALJ found that the claimant's impairments could reasonably cause her alleged symptoms, but that the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the above RFC. [7] at 30. That is to say, Ms. Eubanks's symptoms are legitimate, but only impairing to a point. The ALJ did not believe statements made in excess of that point. Ms. Eubanks was ruled unable to perform any relevant past work because the demands of her previous jobs exceed her RFC. [7] at 33. Her past work was classified as a combination of light, medium, and sedentary semi-skilled work. [7] at 33-34.

The lengthy evidence below was considered by the ALJ in deciding Ms. Eubanks's RFC. First, he reviewed her testimony. [7] at 30. Ms. Eubanks claimed she has debilitating knee and back pain, depression due to pain, mood disorders, anxiety, social phobia, oral lichen plantus, allergic sinusitis, kidney stones, breast implants, and stomach tucks. *Id.* She testified that she was more outgoing before the gastric bypass when she weighed approximately 300 pounds. *Id.* At the time of the hearing, she weighed 206 pounds, yielding a body mass index on the low end of the obesity range. [7] at 31. As such, the ALJ considered the concomitant impact of her obesity on her other disorders for purposes of the RFC. *Id.* She said she stopped working because she could no longer perform the physical demands of her prior job due to her problems

---

[3] Evidence was noted as being considered in accordance with the requirements of 20 C.F.R. §§ 404.1529, 404.1527 and SSRs 96-4p, 96-7p, 96-2p, 96-5p, 96-6p, 06-3p. [7] at 29.

with concentration, anxiety, and chronic pain.  [7] at 30.  Ms. Eubanks also reported that she walks twenty to thirty minutes a day, can prepare simple meals, shop, and do household chores, albeit with some difficulty.  [7] at 32.

After the testimony, the ALJ considered the medical records and opinions.  He began with the records from Robert McGinley, M.D., who treated Ms. Eubanks in mid-2009.  Those records showed a surgical history of gastric bypass, kidney stone removal, breast implants, and tummy tucks.  *Id.* There was an examination of her left knee indicating parapatellar tenderness, but no effusion or instability.  *Id.*  A lumbar spine series showed a mild narrowing at L3-L4 and L4-L5 with a diagnosis of lumbar disc syndrome.  *Id.*  An MRI of the lumbar spine demonstrated borderline spinal stenosis at L3-L4 and L4-L5.  *Id.*

Next, the ALJ reviewed the records of E. Kevin O'Hea, M.D., who was the treating physician for Ms. Eubanks from late 2009 through 2012.  *Id.*  He treated her for hypothyroidism, anxiety disorder, lower back pain, insomnia, lichen plantus, and sinusitis.  *Id.*  The records show that Dr. O'Hea observed tenderness in her back muscles, joint pain, and left leg pain that caused trouble walking.  *Id.*  However, examinations also revealed normal strength and tone of the lower extremities.  *Id.*  In addition to prescribing medication, the doctor recommended weight control, stretching, and exercise for her back and knee pain.  *Id.*  Dr. O'Hea's Disability Questionnaire indicated that he believes she has marked physical and severe mental disabilities.  [7] at 33. The ALJ gave little weight to this opinion because the medical evidence of record does not support it.  *Id.*  Dr. O'Hea did not begin treating Ms. Eubanks until 2009 and she worked until 2010.  *Id.*  The ALJ found that Dr. O'Hea's treatment notes did not reveal the degree of limitation indicated on the questionnaire or contain any similar notation regarding their severity. *Id.*  Furthermore, the Physical Capacity Evaluation Dr. O'Hea submitted with the questionnaire

indicated that Ms. Eubanks was impaired to the point where she could hardly stand, or lift five pounds. *Id.* However, two months after completing the form he told her to stay active and exercise more. *Id.*

The ALJ then moved to Nurse Practitioner Eva Wheeless, who treated Ms. Eubanks from September 2010, through 2011. During this time, Ms. Eubanks reported to the nurse that she walked twenty to thirty minutes a day, five days a week. [7] at 30. The nurse's examinations revealed normal gait, muscle tone, bulk, and strength. *Id.* Like the one submitted by Dr. O'Hea, the RFC Questionnaire submitted by the nurse indicated that Ms. Eubanks had marked physical limitations and extreme mental impairment. [7] at 32. Similarly, the ALJ gave her opinion little weight because the objective medical evidence of record did not support the limitations described. [7] at 33. He also pointed out that, as a nurse, she is not an acceptable medical source. *Id.* Nurse Wheeless only saw Ms. Eubanks three times before completing the forms, and never conducted a psychological evaluation. *Id.* The extent of the physical and mental limitations was also contradicted by examinations conducted by her other doctors. *Id.* The ALJ noted that it appeared Nurse Wheeless relied primarily on the claimant's subjective complaints in completing the forms. *Id.*

Stephen Massey, M.D. saw Ms. Eubanks for a consultative examination at the request of the state agency. [7] at 31. The exam showed tenderness of the lumbar spine, left antalgic gait, difficulty rising from a squatting position, and minor dysesthesia of the medial left lower leg as compared to the right. *Id.* The exam also revealed normal strength and handgrip. *Id.* Dr. Massey opined that Ms. Eubanks is limited to standing briefly, walking short distances and that she is unable to drive or lift anything weighing more than five pounds. [7] at 32. He also stated that she was at risk of knee injury, would require periodic position changes, and may have

difficulty at work due to depression.  *Id.*  The ALJ gave this opinion little weight because he believed it to be based on what the claimant told him at the outset of the examination.  *Id.*  An x-ray of the lumbar spine showed mild degenerative disc disease at multiple levels, and an x-ray of the left knee showed no acute bony process, only evidence of a prior fracture.[4]  [7] at 31.  The ALJ briefly mentioned a second state agency physician (Dr. Culpepper) who believed Ms. Eubanks is capable of performing work at the light level of exertion.  [7] at 32.  Some weight was given to the second agency physician's opinion; however, the ALJ ultimately judged that the record as a whole best supports a finding of limitation to sedentary work.  *Id.*

At the request of the state agency, Martha D'Ilio, Ph.D. administered a comprehensive mental status evaluation on February 23, 2011.  [7] at 31.  Ms. Eubanks reported taking an antidepressant for many years.  *Id.*  The examination yielded no evidence of a formal thought disorder or any psychotic features, but did yield symptoms of both anxiety and depression.  *Id.*  Dr. D'Ilio opined that Ms. Eubanks was capable of performing routine, repetitive tasks, and interacting with coworkers as well as maintaining adequate attention and concentration.  [7] at 32.  A second state agency psychologist gave a similar opinion.  *Id.*  The ALJ gave these opinions great weight in determining that Ms. Eubanks is limited to simple, routine, repetitive tasks.  *Id.*

Finally, the ALJ considered the medical records of the claimant's psychiatrist, Arvinder Kaul, M.D.  He treated Ms. Eubanks for generalized anxiety disorder and major depressive disorder, single episode severe.  [7] at 31.  The records show that her symptoms would temporarily worsen after certain situational events.  [7] at 31-32.  However, her symptoms improved over time with medication.  [7] at 32.  Dr. Kaul's records also show that Ms. Eubanks

---

[4] The ALJ's opinion could be misread to indicate Dr. Massey conducted or considered the x-rays.  The record could be misread to indicate the same.  This is addressed under the Discussion section below.

moved furniture at night when she was unable to sleep.  [7] at 31.  The doctor described her

symptoms as being mild or moderate, depending on the occasion.  [7] at 31-32.  Dr. Kaul gave

no opinion as to disability.

At step five, the ALJ considered the age, education, work experience, and RFC of Ms.

Eubanks, along with the testimony of a vocational expert, to determine if there are jobs in the

economy she can perform.  [7] at 34.  Taking the above into consideration, the vocational expert

identified three sedentary, unskilled jobs as examples of the type of work Ms. Eubanks is fit to

perform.  [7] at 35, 59.  As a result, the ALJ concluded that Ms. Eubanks is not disabled for

purposes of DIB.  [7] at 35.

## IV. DISCUSSION

Plaintiff brings this action, arguing that the ALJ erred in making his determinations, and

the Acting Commissioner erred in accepting those determinations.  The Court finds that the

ALJ's ruling is adequate and that the decision of the Acting Commissioner to reject Plaintiff's

application for DIB is therefore **AFFIRMED**.  The relevant issues are discussed below.

### A.  Weight of the Medical Opinions

The Court finds that ALJ did not err in weighing the various medical opinions in the

record.  For evaluating DIB claims, medical opinions are defined as "statements from physicians

and psychologists or other acceptable medical sources that reflect judgments about the nature

and severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1527(a)(2).  Ordinarily, the

opinion of the claimant's treating physician is accorded great weight in determining disability.

*Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); s*ee Leggett v. Chater*, 67 F.3d 558, 566 (5th

Cir. 1995).  Indeed, a treating physician's opinion on the nature and severity of the claimant's

impairment is given controlling weight if it is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Newton*, 209 F.3d at 455; 20 C.F.R. § 404.1527(c)(2). However, the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" or good cause is shown. *Newton*, 209 F.3d at 455; *see Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); 20 C.F.R. § 404.1527(c)(1)-(6). The seminal case describing the factors the ALJ must consider in the Fifth Circuit is *Newton*, which holds that the regulation requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456. Additionally, a finding that a treating source's opinion is unsupported by or is inconsistent with the evidence only means that the opinion is not entitled to "controlling weight," not necessarily that the opinion should be rejected. SSR 96-2p, 61 F.R. 34490, 34491 (July 2, 1996).

Evidence from non-examining sources is considered by the ALJ as opinion evidence. 20 C.F.R. § 404.1527(e). The same rules and factors above apply when weighing non-examining source opinions. *Id.* Due to the lack of any relationship to the claimant, such opinions are weighed by stricter standards based upon the medical evidence, and are generally given less weight as a result. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996). On the other hand, it may be appropriate to give a non-examining source's opinion greater weight than a treating source's opinion under certain circumstances. *See Hillman v. Barnhart*, 170 Fed. Appx. 909, 912-13 (5th Cir. 2006); SSR 96-6p. For example, when the non-examining source's opinion is based on a

record that includes a medical report from a specialist which provides more detailed and comprehensive information than what was available to the treating source.  *See* SSR 96-6p.  However, the ALJ is not bound by opinions from non-examining medical sources.  *Id.*  The ALJ is ultimately responsible for deciding whether or not a claimant is disabled.  *See Greenspan*, 38 F.3d at 237; 20 C.F.R. § 404.1527(d).

The Plaintiff claims the ALJ erred at step four in rejecting the opinions of Ms. Eubanks's treating physician and others, thereby rendering an inaccurate RFC.  Mem. Supp. Pl.'s Mot. Summ. J. 14, ECF No. 8-1.  First, Plaintiff argues that the ALJ failed to mention important notations made by Dr. O'Hea regarding Ms. Eubanks's health.  *Id.* at 17.  Second, Plaintiff claims that giving little weight to and/or rejecting the opinion of Dr. Massey was incorrect because there is nothing in his report to suggest he was merely parroting what Ms. Eubanks told him.  *Id.* at 18.  It is further argued that since Dr. Massey's opinion was written in the "Medical Assessment" section of his report, and he specifically states that Ms. Eubanks "has medical impairments that affect her ability to perform work related activities," he was thereby rendering his own opinion and not reiterating statements made to him by Ms. Eubanks.  *Id.*  Lastly, Plaintiff contends that the opinion of Dr. Culpepper, who found the claimant was able to perform light work, was in fact rejected by the ALJ in finding a limitation to sedentary work based on the record as a whole.  *Id.* at 18-19.

The Defendant counters by arguing the ALJ accorded appropriate weight to the various physicians and properly considered the relevant evidence when assessing Ms. Eubanks's RFC.  Def.'s Mem. Supp. Comm'r's Dec. 6, 8, 16, ECF No. 10.  Defendant asserts that the ALJ had good cause for assigning little or no weight to the opinions of Dr. O'Hea, Dr. Massey, and Ms. Wheeless due to the observed conflicts between their medical opinions and the medical record.

*Id.* at 6-7, 16.  It is specifically noted that Nurse Practitioner Wheeless's limited interaction with Ms. Eubanks makes it unlikely she could provide any special knowledge regarding Ms. Eubanks that might justify giving her opinion greater weight.  *Id.* at 9.

As an initial matter, the record does not support the assertion that the ALJ "rejected" any medical opinion.  The ALJ gave "little weight" to a number of medical opinions in making his RFC determination, including that of treating physician, Dr. O'Hea.  [7] at 33.  In doing so, the ALJ noted that (1)[5] Dr. O'Hea did not begin treating Ms. Eubanks until 2009.  *Id.*  While the (2) frequency of examination was not specifically mentioned in the opinion, it was adequately considered by reference to information obtained from the examinations.[6]  [7] at 30, 33.  The ALJ acknowledges (3) Dr. O'Hea treated the claimant from 2009 through 2011 as her primary care physician for a number of specific ailments.  [7] at 30, 292, 300.  It is also noted that (4) Dr. O'Hea's treatment notes do not reveal the degree of limitation outlined by his opinion, and that the opinion (5) is not consistent with the record as a whole.  [7] at 33.

Substantial evidence supports the ALJ's reasoning under factors four and five.  Contrary to Plaintiff's assertion, the ALJ did recognize Dr. O'Hea's October 11, 2011 report in which Ms. Eubanks claimed that every joint in her body hurt and she has trouble walking.  [7] at 30, 331-32.  In fact, the examination and impression/plan contained in that report support the ALJ's finding.  Dr. O'Hea opined that Plaintiff could sit for less than one hour and stand for less than one hour in an eight-hour day, [7] at 294, yet Dr. O'Hea's examination revealed "tenderness" in her joints and he advised her to "stay active and do exercise," [7] at 331-32.  He also observed that she had normal leg strength and tone.  [7] at 312, 328.  These observations and

---

[5] For the purpose of efficiency, the numbers in parenthesis note the ALJ's consideration of the corresponding *Newton* factor(s).  These factors are listed and numbered on page nine of this decision.
[6] Since the claimant saw Dr. O'Hea primarily for medication refills and minor colds, which were referenced in the opinion, the frequency of Dr. O'Hea's examinations was sufficiently considered for the purposes of this case.

recommendations do not reflect the degree of impairment outlined in Dr. O'Hea's opinion.  The objective test data are also inconsistent with Dr. O'Hea's opinion.  The 2009 MRI, which the ALJ mentioned at the hearing, [7] at 48, and the 2011 x-rays suggest a lesser degree of impairment.  [7] at 222, 263-65.  Moreover, the records from the claimant's psychiatrist and the mental evaluations by Drs. D'Ilio and Lukens all indicate only mild to moderate mental symptoms and impairment.  [7] at 337, 339, 341, 239, 250-55.  This is inconsistent with Dr. O'Hea's assessment of marked and extreme mental impairment.  [7] at 295.  Lastly, Dr. O'Hea was acknowledged as a medical doctor, suggesting consideration of (6) his specialization as a Family Physician as opposed to, for example, a Nurse Practitioner.  [7] at 33, 300.  The comparison of Dr. O'Hea's opinion to the records of the claimant's psychiatrist also suggests the ALJ knew of and considered the doctor's specialization.  [7] at 33.

Nurse Practitioner Wheeless's opinion was also given little weight.  [7] at 33.  The ALJ points out that she only (1) saw the claimant three times (2) over the span of ten months.  [7] at 30, 33.  At the hearing, he acknowledged that Ms. Eubanks and the nurse have a (3) close relationship.  [7] at 49.  The ALJ indicated that the (4) objective medical evidence of record (5) as a whole does not support the nurse's opinion.  [7] at 33.  As the nurse's opinion was essentially the same as Dr. O'Hea's, the same evidence cited above supports this finding.  Additionally, Nurse Wheeless's records indicate that the Plaintiff can walk normally and that she has normal leg tone, bulk, and strength.  [7] at 280.  This is also inconsistent with her opinion.  Finally, the ALJ considered Ms. Wheeless's (6) specialization, or lack thereof, when he noted that she is not an acceptable medical source.[7]  [7] at 33.

---

[7] Defendant incorrectly argues that the nurse's opinion carries weight only to the extent she has special knowledge particular to the Plaintiff.  Def.'s Mem. Supp. Comm'r's Dec. 9, ECF No. 10.  Such a qualification only applies to opinions by "non-medical" sources, such as teachers, counselors, and social workers.  SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  Due to her medical training as a nurse, Ms. Wheeless is considered a medical source that is not "acceptable" under the regulation, so the listed factors apply in determining the weight of her opinion.  *Id.*

Dr. Massey's opinion was given little weight as well. [7] at 32. He saw Ms. Eubanks for a (1)(2) single (3) consultative exam. [7] at 30. The ALJ believed his opinion seemed (4) based primarily on the claimant's self-report, as opposed to examination or test data. [7] at 32. This finding is supported, and some confusion is cleared up, upon a close examination of the record. It is unlikely Dr. Massey considered the x-rays of Plaintiff's spine and left knee when making his assessment, even though the x-rays were taken on the same day. [7] at 258, 263, 265. Dr. Massey acknowledged Plaintiff's (not completely accurate) accounting of her previous MRI results, yet made no mention of the x-rays in his report. [7] at 258-61. This would be highly unusual if he had seen them. Additionally, a different physician at a different, and organizationally unrelated, medical facility ordered the x-rays. [7] at 263, 265. What is more, the radiologist did not sign off on the spinal x-ray until 2:00pm the day after Dr. Massey saw the claimant. [7] at 263. If Dr. Massey ever saw the x-ray results, it was most likely after rendering his opinion.

Considering these circumstances along with Dr. Massey's unremarkable clinical observations, there is substantial evidence supporting the ALJ's belief that the doctor's opinion merely reflected the claimant's self-report. While the wording and positioning of the opinion may indicate otherwise, it is not the duty of this court to reweigh the evidence. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). In any event, the ALJ acknowledged that Dr. Massey's opinion is (5) inconsistent with the opinion given by the second state doctor, Dr. Culpepper. [7] at 32. The ALJ also acknowledged that Dr. Massey is (6) a medical doctor. [7] at 30.

Finally, the ALJ gave "some" weight to Dr. Culpepper's opinion that the claimant could perform light work. [7] at 32. Unlike the above medical professionals, (1)(2)(3)Dr. Culpepper

13

did not examine Ms. Eubanks.  On the other hand, (4) Dr. Culpepper explicitly considered the recent x-rays of her back and knee in his opinion.  ([7] at 268).  (5) The others did not.  The ALJ acknowledged that Dr. Culpepper is a (6) state agency physician.  [7] at 32.  Since Dr. Culpepper's opinion was supported by evidence not considered by the examining medical sources, the ALJ did not err in granting his opinion greater weight.  *See Hillman v. Barnhart*, 170 Fed. Appx. 909, 912-13 (5th Cir. 2006); SSR 96-6p, 1996 WL 374180 (July 2, 1996). Furthermore, the ALJ was free to weigh the opinion as he judged appropriate.  *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); 20 C.F.R. § 404.1527(d).  The weight given to the other medical opinions is not contested.

In reviewing the above, the Court finds that the ALJ applied the correct legal standards in weighing the medical opinions, and that substantial evidence supports his decision to do so.

**A.  The ALJ's Credibility Determination Regarding Plaintiff's Symptoms**

The ALJ did not err in making his credibility determination regarding the Plaintiff's symptoms.  When considering a claimant's symptoms, the ALJ must follow a two-step process. 20 C.F.R. § 404.1529.  First, he must find evidence of a physical or mental impairment, which can reasonably be expected to produce the claimant's symptom(s).  *Id.* § 404.1529(b).  Then he must consider the available evidence to evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's capacity for work.  *Id.* § 404.1529(c)(1).  Since many symptoms such as pain are subjective and difficult to quantify, any reported symptom-related limitations are taken into account so long as they are consistent with the objective medical evidence and other evidence.  *Id.* § 404.1529(3).

Whenever the claimant's statements about the intensity, persistence, or functionally limiting effects of their symptoms are not substantiated by the objective medical evidence, the

ALJ must then make a finding on the credibility of the claimant's statements based on consideration of the entire case record.  *Id.* § 404.1529(4); SSR 96-7p, 1996 WL 374186 (July 2, 1996).  To determine credibility, the ALJ must consider the objective medical evidence as well as any evidence related to subjective complaints, including prior work history and observations by third parties relating to such factors as: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptom; (5) treatment, other than medication, used to alleviate symptoms; (6) any measures other than treatment used to alleviate symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(3)(i)-(vii).

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence in general, and provides two specific reasons why.  Based on statements made at the hearing, Plaintiff reasons that the ALJ formed his opinion regarding Ms. Eubanks's pain prior to her testimony, and therefore did not properly consider her statements in his ruling.  Mem. Supp. Pl.'s Mot. Summ. J. 11-12, ECF No. 8-1.  The second reason is that the RFC determination is inconsistent with the opinions of Dr. O'Hea, Nurse Practitioner Wheeless, and Dr. Massey.  *Id.* at 12-13.  Plaintiff's second reason has already been addressed.  As discussed above, the ALJ properly discounted these medical opinions.  The Defendant argues that substantial evidence does support the ALJ's credibility determination, pointing to Plaintiff's daily activities as reflected in the record.  Def.'s Mem. Supp. Comm'r's Dec. 20-21, ECF No. 10.

An examination of the opinion and record illustrates that the ALJ took the proper steps and that there is substantial evidence in support of his credibility finding.  The ALJ found at step

one that Ms. Eubanks suffered from medically determinable impairments that could reasonably be expected to cause the pain she claimed. [7] at 30. At step two, the ALJ determined that her claims concerning the intensity, persistence and limiting effects of her pain were only credible to the point of limitation outlined in the RFC. *Id.*

First, the hearing transcript belies Plaintiff's interpretation. At no point did the ALJ "simply [tell] her what she was or was not feeling." Pl.'s Mem. 11. After going through his interpretation of the objective medical records with Ms. Eubanks, the ALJ specifically noted her left knee pain, [7] at 47, mouth pain from oral lichen plantus, [7] at 48, and he directly solicited her explanation of the back and leg pain caused by her spinal stenosis, [7] at 52. He also listened to her testimony regarding the impact her pain has on her day-to-day activities, and vice versa. [7] at 56.

The ALJ determined that the medical evidence and the evidence regarding her level of activity are inconsistent with her testimony of experiencing serious, debilitating pain. [7] at 32. He pointed out in his decision that the record shows only a slightly antalgic left gait, some decreased range of motion, and tenderness. *Id.* The decision also reflects that she has normal leg strength, walks for twenty to thirty minutes five days a week, moves furniture when she cannot sleep, and is independent in self-care. *Id.* Furthermore, he acknowledged that Ms. Eubanks takes medication for her pain, [7] at 52, and that her physicians prescribed stretching and exercise treatment, [7] at 32. The record shows that her pain goes down from a ranking of about 7/10 to 3/10 when taking her medication. [7] at 344. At the hearing, the ALJ noted that the MRI and x-ray results are also inconsistent with her testimony. [7] at 52. Dr. Culpepper's opinion reinforces such a conclusion. [7] at 263-65. Unlike Dr. Culpepper, the ALJ found the Plaintiff's claims credible to the point that her pain limited her to sedentary work, as opposed to

light work.  [7] at 29.  The sit/stand option in the RFC and the ALJ's willingness to make an allowance for Ms. Eubanks at the hearing suggest that he considered other relevant factors as well.  [7] at 29, 55.

B.  Evidence in Support of Plaintiff's RFC

Substantial evidence in the record supports the RFC assessment.  The regulations state that the ALJ will "consider all evidence in your case record when [he] make[s] a determination or decision whether you are disabled."  20 C.F.R. § 404.1520(a)(3).  The regulations also state that where the evidence is inconsistent, the ALJ will "weigh the relevant evidence and see whether [he] can determine whether you are disabled based on the evidence [available]."  *Id.* § 404.1520b(b).  The ALJ has the ultimate authority to decide whether a claimant is disabled.  *Id.* § 404.1527(d).

Plaintiff claims the ALJ erred because he made no attempt to set forth an evidence-based rationale and failed to identify any specific evidence in support of his RFC assessment.  Mem. Supp. Pl.'s Mot. Summ. J. 19-20, ECF No. 8-1.  It is also argued that the decision should be overturned because the RFC's limitation to sedentary work is not directly supported by the opinion of any treating or examining physician.  *Id.*  In response, the Defendant maintains that the ALJ has the ability to base his RFC decision on the totality of the record and render commonsense judgments about the Plaintiff's RFC in the workplace.  Def.'s Mem. Supp. Comm'r's Dec. 13, ECF No. 10.

Contrary to Plaintiff's claim, the ALJ's opinion makes multiple direct references to the medical findings set forth in the record, and specifically notes the weight he accorded each in making his RFC assessment.  [7] at 32, 33. By stating the relative weight he in fact gave each opinion, the ALJ was unequivocally identifying the specific evidence he used to support his RFC

assessment and to what extent he used it. Furthermore, the ALJ expressly stated that the record as a whole supported his RFC determination. [7] at 33. This was not merely a commonsense judgment. Def.'s Mem. 13. The ALJ did so in order to make it clear that he considered all the medical opinions, but did not find any single opinion to be dispositive. Weighing all the inconsistent evidence, as done by the ALJ, is in direct adherence to the regulations. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b(b).

As previously noted, it may be appropriate to give a non-examining source's opinion greater weight than a treating source's opinion under certain circumstances. *See Hillman v. Barnhart*, 170 Fed. Appx. 909, 912-13 (5th Cir. 2006); SSR 96-6p, 1996 WL 374180 (July 2, 1996). Additionally, the regulations task the ALJ with weighing inconsistent evidence and designate him as the ultimate authority on whether a claimant is disabled. 20 C.F.R. §§ 404.1520b(b), 404.1527(d). Consequently, Plaintiff's contention that a medical opinion must directly support the RFC is incorrect. Pl.'s Mem. 20.

## C. The ALJ's Hypothetical

While the ALJ's hypothetical question to the vocational expert was not perfect, it was nonetheless adequate. At step five, the ALJ must determine whether the claimant can adjust to working again. 20 C.F.R. § 416.920(a)(4)(v). To make this determination, he must consider the claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. *Id.*; 20 C.F.R. Part 404, Subpart P, Appendix 2. Where the RFC assessment finds that the claimant has the ability to do less than a full range of sedentary work due to their symptoms or impairments, the ALJ must consider the extent of the claimant's limitations when determining their ability to return to work. SSR 96-9p, 1996 WL 374185 (July

2, 1996).  "The RFC assessment must be sufficiently complete to allow an adjudicator to make an informed judgment regarding these issues."  *Id.*

Specifically, when the RFC includes a need to alternate between sitting and standing, the extent of limitation depends on the facts in the case record.  *Id.*  Where the need cannot be accommodated by scheduled breaks and a lunch period, the claimant would be unable to perform such work.  *Id.*  As such, the Social Security Administration says, "the RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing."  *Id.*  Since each case is unique and the guidelines are not always straight-forward, ALJs typically consult with a Vocational Expert ("VE") to determine whether there are jobs available for someone matching the claimant's RFC, age, education, and work experience.  *See* SSR 83-12, 1983 WL 31253 (1983); SSR 83-14, 1983 WL 31254 (1983).  VEs are vocational professionals who provide an impartial expert opinion for the ALJ to weigh along with the other evidence in determining disability.  SSR 96-9p, 1996 WL 374185 at *9 n.8.

Plaintiff claims the hypothetical question posed to the VE fails to "incorporate reasonably all disabilities of the claimant as recognized by the ALJ," and therefore merits a reversal of the Acting Commissioner's decision.  *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); Mem. Supp. Pl.'s Mot. Summ. J. 10-11, ECF No. 8-1.  Plaintiff supports this claim by making two arguments.  First, the ALJ's failure to mention the frequency of the sit/stand option is in violation of SSR 96-9p.  Pl.'s Mem. 9.  Second, the claimant's moderate mental impairments were not reflected in the ALJ's hypothetical.  *Id.* at 10.

The Defendant contends that specifying the frequency of the sit/stand option is not strictly required in all instances.  Def.'s Mem. Supp. Comm'r's Dec. 14, ECF No. 10.  Alternatively, the failure to do so is, at most, harmless error because the reasonable implication

is that the sit/stand option would be at Plaintiff's own volition or "as needed." *Id.* at 14-15.

Regarding Plaintiff's second argument, the Defendant claims the ALJ's limitation to "simple, routine, repetitive tasks and to dealing with objects rather than data or people" reasonably incorporates Ms. Eubanks's limitations in social functioning and concentration. *Id.* at 18-19.

At the hearing, the ALJ posed two hypothetical questions to the VE, Ms. Katrina Verdin. [7] at 57-60. The ALJ used the VE's answer to his first question to arrive at his decision. [7] at 34. Ms. Eubanks's RFC assessment is for sedentary work with a sit/stand option, which his question to the VE reflected. [7] at 29, 57. The question also incorporated the claimant's age, educational, and vocational background. [7] at 57. However, neither the RFC nor the ALJ's question to the VE included anything regarding the frequency of Ms. Eubanks's need to alternate between sitting and standing. [7] at 29, 57.

Plaintiff is correct in pointing out that the hypothetical question failed to mention how frequently Ms. Eubanks would need to alternate between sitting and standing, as formally required by the Commissioner's guidance. SSR 96-9p. However, the functional purpose of this requirement is to allow an adjudicator to make an informed judgment regarding the issue. *Id.* Put another way, it serves to help determine whether scheduled breaks at a given job can accommodate the limitation, based on the facts of the case. *Id.*

In this case, the VE was present for the entire hearing. [7] at 42. She witnessed the ALJ and Ms. Eubanks go through the testimony, medical history, medical records, and medical opinions related to her DIB claim. [7] at 42-57. The VE also witnessed Ms. Eubanks alternate between sitting and standing at the hearing. [7] at 55. Considering the VE's expertise and the detailed knowledge of the claimant's case she possessed at the time, it is highly unlikely the ALJ's omission hindered her from providing an informed answer. What is more likely is that the

VE and the ALJ were on the same page, given their levels of expertise and knowledge of the facts.  Although the hypothetical in this case may not have fulfilled the form of the rule, it almost certainly fulfilled its function.

Either way, the result is the same.  Procedural perfection is not required in an administrative proceeding, so long as the substantial rights of a party are not affected.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  As the Defendant points out, unreported cases in the Fifth Circuit indicate that a lack of specificity regarding a sit/stand option is properly considered to be harmless error.  *See Charles v. Astrue*, 291 Fed. Appx. 552, 554 n.3 (5th Cir. 2008); *Young v. Comm'r of Soc. Sec.*, No. CV08-0474, 2009 WL 2827945, at *12 (W.D. La. Sept. 1, 2009).  For our purposes, it does not matter whether or not the option was intended to be exercised "at will" by Ms. Eubanks.  Since the Plaintiff has not provided evidence to show that the ALJ's omission prejudiced her or affected the outcome of the case in any way, the omission was harmless.  *See Morris*, 864 F.2d at 335.  Moreover, Ms. Eubanks's attorney was present at the hearing, [7] at 42, and had ample opportunity to correct any defect in the hypothetical by mentioning additional or more specific limitations to the VE.  *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Morris*, 864 F.2d at 336.

The Plaintiff's second argument regarding the hypothetical does not pass muster.  Plaintiff contends that the claimant's moderate mental limitations with regard to maintaining *concentration*, persistence, or pace were not incorporated into the ALJ's hypothetical question.  Pl.'s Mem. 10 (emphasis added).  The hearing transcript shows that the ALJ specifically asked the VE to consider "mental and medication-related impairments that affect memory and *concentration*[.]  [T]his person is limited to work that requires only simple, routine, repetitive tasks, dealing with objects, rather than data or people."  [7] at 58 (emphasis added).  The ALJ's

reference to "concentration" in the question defeats Plaintiff's argument on its face.  Again, if the Plaintiff's attorney was concerned with the adequacy of the hypothetical, he could have raised the issue at the hearing.  *See Morris*, 864 F.2d at 336.  Including a limitation to work requiring "only simple, routine, repetitive tasks dealing with objects, rather than data or people" in the hypothetical indicates–on its own–that the ALJ reasonably incorporated her moderate mental impairment.  *See Bordelon v. Astrue*, 281 Fed. Appx. 418, 423 (5th Cir. 2008) ("restrictions to rare public interaction, low stress, and simple, one-to-two-step instructions reflect that the ALJ reasonably incorporated [claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper").  Furthermore, the ALJ noted in his ruling that he gave the opinions of the two state psychologists great weight in determining that Ms. Eubanks is limited to "simple, routine, repetitive tasks."  [7] at 32.  Both opined that she has moderate mental impairment.  [7] at 239, 250, 252.  In any event, the ALJ's hypothetical sufficiently accounted for the claimant's mental impairments, and does not provide sufficient grounds for reversal of the Acting Commissioner's decision.

## VII. CONCLUSION

Based on the foregoing, the Acting Commissioner's denial of disability insurance benefits to Eubanks is **AFFIRMED**.

SO ORDERED AND ADJUDGED this 29th day of August, 2014

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE